UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:10-CV-00133-JHM

WILLIE E. MANN; BRENDA MANN;            PLAINTIFFS
and JIMMIE MORAN,

v.

MARK REEDER and                  DEFENDANTS
HUMANA INSURANCE COMPANY, INC.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion to dismiss [DN 6] by Defendants Mark Reeder and Humana Insurance Company, Inc. ("Humana"). Fully briefed, the matter is ripe for decision.

### I. BACKGROUND FACTS

This case arises out of a dispute over a Medicare health insurance policy issued to Plaintiffs by Humana. In October of 2008, Plaintiffs enrolled in a Medicare Advantage Private Fee-for-Service Plan ("Plan") administered by Humana. The policy was sold by Mark Reeder, a Humana agent. The policy initially provided for no monthly premiums and Plaintiffs allege that Reeder guaranteed them the premiums would not increase by more than $3 a month. However, on October 16, 2008, Humana notified Plaintiffs that the premiums had increased to $50 a month. Following the premium increase, Plaintiffs requested cancellation of their policy. Federal law provides for a limited disenrollment window for an insured who wishes to cancel their Medicare coverage. Because the Plaintiffs attempted to cancel outside the allowable time limit, Humana denied their request and this action resulted.

### II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion asserting

"lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is always a threshold determination," Am. Telecom Co. v. Republic of Lebanon, 501 F.3d 534, 537 (6th Cir. 2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," Schultz v. General R.V. Center, 512 F.3d 754, 756 (6th Cir. 2008). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." Gentek Bldg. Prods., Inc. v. Steel Peel Litig. Trust, 491 F.3d 320, 330 (6th Cir. 2007). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. A complaint falls short if it pleads facts "merely consistent with

a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 1949-50. Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.  DISCUSSION

Plaintiffs initiated this action in state court alleging fraud and breach of contract. Plaintiffs allege that Defendants fraudulently misrepresented the premium structure of the insurance contract and then failed to disenroll them from the Plan following several requests. Plaintiffs also claim that the parties contracted for a certain premium rate and Defendants breached the contract when the rates increased beyond what was promised. Defendants removed the case to this Court and Plaintiffs responded with a motion to remand pursuant to 28 U.S.C. § 1447(c). The Court denied Plaintiffs' Motion to Remand and requested that Plaintiffs file a substantive response to Defendants' Motion to Dismiss. Defendants now move the Court to dismiss this action because: (1) Plaintiffs did not first exhaust their administrative remedies; (2) Plaintiffs' allegations are preempted by federal law; (3) Plaintiffs failed to plead fraud with particularity; and (4) Reeder, as Humana's agent, can not be held personally liable for breach of contract. The Court will discuss each of Defendants' arguments in turn.

### A.  Exhaustion of Administrative Remedies

Defendants argue that this Court can not exercise jurisdiction over the claims because Plaintiffs failed to first exhaust their administrative remedies. "Title 42 U.S.C. § 405(h) . . . makes § 405(g)[1] the sole avenue for judicial review of all 'claim[s] arising under' the Medicare Act."

---

[1] Section 405(g) states that "[a]ny individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . ." 42 U.S.C. § 405(g) (2010).

3

Heckler v. Ringer, 466 U.S. 602, 614-15 (1984) (quoting 42 U.S.C. § 405(h) (2010)). "[T]he exhaustion requirement of § 405(g) consists of a non-waivable requirement that a claim for benefits shall have been presented to the Secretary, and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant." Heckler, 466 U.S. at 617 (internal quotations and citation omitted). Once the aggrieved party has "pressed his claim" through all levels of administrative review, the Secretary will then issue a "final decision." Id. at 605. It is not until a "final decision" has been reached that judicial review is appropriate for claims "arising under" the Medicare Act. Id. In sum, "[j]urisdiction over cases 'arising under' Medicare exists only under 42 U.S.C. § 405(g), which requires an agency decision in advance of judicial review." Kaiser v. Blue Cross of California, 347 F.3d 1107, 1111 (9th Cir. 2003). This framework "channels most, if not all, Medicare claims through this special review system." Shalala v. Illinois Council on Long Term Care, 529 U.S. 1, 8 (2000).

Plaintiffs concede that they have not exhausted their administrative remedies. Thus, the only issue here is whether Plaintiffs' claims "arise under" the Medicare Act. "The Supreme Court has identified two circumstances in which a claim 'arises under' the Medicare Act: (1) where the standing and the substantive basis for the presentation of the claims is the Medicare Act; and (2) where the claims are inextricably intertwined with a claim for Medicare benefits." Uhm v. Humana, Inc., 620 F.3d 1134, 1142 (9th. Cir. 2010) (internal quotations and citation omitted). Although the Supreme Court has construed the phrase "arising under" quite broadly, "[s]everal federal courts have since . . . [found] that any claim which is not, at bottom, a claim for reimbursement of benefits, is not 'inextricably intertwined' with a claim for benefits and therefore does not arise under the Act." Albright v. Kaiser Permanente Med. Grp., 1999 WL 605828, at *3 (N.D. Cal. Aug. 3, 1999) (citing

4

Ardary v. Aetna Health Plans of California, Inc., 98 F.3d 496 (9th Cir. 1996); Plocica v. Nylcare of Texas, Inc., 1999 WL 166325 (N.D. Tex. Mar. 2, 1999); Kelly v. Advantage Health, Inc., 1999 WL 294796 (E.D. La. May 11, 1999); Wartenberg v. Aetna U.S. Healthcare, Inc., 2 F. Supp. 2d 273 (E.D.N.Y. 1998); Berman v. Abington Radiology Assoc., Inc., 1997 WL 534804 (E.D. Pa. Aug. 14, 1997)). Accordingly, in the Sixth Circuit, "a court must examine whether the allegedly collateral claim involves completely separate issues from the party's claim that it is entitled to benefits or continued participation in the Medicare program or whether it is inextricably intertwined with its substantive claim to benefits or participation." Cathedral Rock of N. Coll. Hill, Inc. v. Shalala, 223 F.3d 354, 363 (6th Cir. 2000).

Turning first to the claim that Humana failed to disenroll Plaintiffs from the Plan. The disenrollment procedures are specifically regulated, monitored, and controlled by CMS. See 42 C.F.R. §§ 422.62-422.74. Plaintiffs were required to comply with the disenrollment procedures if they wished to withdraw from the Plan. If Plaintiffs attempted to disenroll within the allowable window and otherwise complied with the CMS rules, and Defendants nevertheless denied the request, the standing and substantive basis for the claim would be the Medicare Act. Furthermore, the claim is "inextricably intertwined" with a claim for benefits because it is a "substantive claim to . . . participation" in the Plan. Cathedral Rock, 223 F.3d at 363. Accordingly, the claim that Defendants failed to appropriately disenroll Plaintiffs from the Plan "arises under" the Medicare Act and is dismissed for failure to first exhaust the administrative remedies available.

However, Plaintiffs' fraud claim is not inextricably intertwined with a claim for benefits nor does the Medicare Act provide the standing for this claim. Plaintiffs allege that they would not have enrolled in the Medicare program but for Reeder's alleged misrepresentations. This is not a claim

5

where "at bottom, [is] a claim that they should be paid for [benefits]." Heckler, 466 U.S. at 614. "The basis of [this] claim[] is an injury collateral to any claim for benefits; it is the misrepresentations themselves which [Plaintiffs] seek to remedy. The [Planitiffs] may be able to prove the elements of [fraud] without regard to any provisions of the Act relating to provision of benefits." Uhm, 620 F.3d at 1145. See Kaiser v. Blue Cross of California, 347 F.3d 1107, 1115 (9th Cir. 2003) ("The only claim that arguably is not subject to 42 U.S.C. § 405(h) is the plaintiffs' defamation and invasion of privacy claim, since the alleged statements, while they concern CHH's dealings with the HCFA, are largely independent of the underlying Medicare law."). Accordingly, the fraud claim is not subject to the Act's administrative remedy provision.

The breach of contract claim is also not "merely [a] creatively disguised claim[] for benefits." Uhm, 620 F.3d at 1143. Plaintiffs allege that Humana contracted for a special premium rate beyond what appeared in the Act and breached that contract when the premiums increased to $50 a month. Unlike the plaintiffs in Uhm, the Plaintiffs here do allege "that Humana promised . . . . more than to abide by the requirements of the Act . . . [and] they identify or describe in their complaint . . . obligations above and beyond Humana's obligations under the Act. Thus, there is [a] claim that the alleged contract imposed . . . duties above and beyond compliance with the Act itself." Id. The claim is not one for benefits or for participation in the Plan, but for failing to provide the promised premium rates. Therefore, the Act's exhaustion requirement is inapplicable to the breach of contract claim.

### B. Preemption

Defendants also contend that Plaintiffs' state law fraud claim is preempted by the Medicare Act's express preemption provision. "Where a state statute conflicts with, or frustrates, federal law,

the former must give way." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663 (1993). "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." Altria Grp., Inc. v. Good, 129 S.Ct. 528, 543 (2008). "[H]owever, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption. Thus, pre-emption will not lie unless it is the clear and manifest purpose of Congress." CSX Transp., 507 U.S. at 664 (internal quotation marks omitted). "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." Id.

The express provision cited by Defendants provides:

> (3) Relation to State laws
>
> The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage ("MA")] plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3) (2010). Therefore, the Court must "identify the domain expressly pre-empted by that language." Medtronic, Inc. v. Lohr, 518 U.S. 470, 484 (1996) (internal quotation marks omitted).

CMS has established standards for Plan "marketing materials" and any state laws attempting to regulate "marketing materials" are therefore preempted by federal statute. For example, Plan providers are subject to 42 C.F.R. § 422.2262 which requires a provider to submit its "marketing materials" to the Center for Medicare and Medicaid Services ("CMS") for review prior to

7

distribution to ensure the materials comply with the numerous federal standards.[2]  See Clay v. Permanente Med. Grp., 540 F. Supp. 2d 1101, 1108 (N.D. Cal. 2007) ("The standards established under this statute[, 42 U.S.C. § 1395w-26(b)(3),] include . . . 'Approval of marketing materials and election forms.'") (citation omitted).  Thus, the issue here is whether Reeder's alleged misrepresentations qualify as "marketing materials."

The definition of "marketing materials" is provided in 42 C.F.R. § 422.2260:

> Marketing materials include any informational materials targeted to Medicare beneficiaries which:
>
> (1) Promote the MA organization, or any MA plan offered by the MA organization.
>
> (2) Inform Medicare beneficiaries that they may enroll, or remain enrolled in, an MA plan offered by the MA organization.
>
> (3) Explain the benefits of enrollment in an MA plan, or rules that apply to enrollees.
>
> (4) Explain how Medicare services are covered under an MA plan, including conditions that apply to such coverage.
>
> (5) May include, but are not limited to, the following:
>
>> (i) General audience materials such as general circulation brochures, newspapers, magazines, television, radio, billboards, yellow pages, or the Internet.
>>
>> (ii) Marketing representative materials such as scripts or outlines for telemarketing or other presentations.
>>
>> (iii) Presentation materials such as slides and charts.
>>
>> (iv) Promotional materials such as brochures or leaflets, including materials for circulation by third parties (for

---

[2] Prior to the 2003 Amendments, 42 U.S.C. § 1395w-26(b)(3) stated in part: "State standards relating to the following are superseded under this paragraph: . . . (iv) Requirements relating to marketing materials and summaries and schedules of benefits regarding a Medicare+Choice plan."

>> example, physicians or other providers).
>
> (v) Membership communication materials such as membership rules, subscriber agreements, member handbooks and wallet card instructions to enrollees.
>
> (vi) Letters to members about contractual changes; changes in providers, premiums, benefits, plan procedures etc.
>
> (vii) Membership activities (for example, materials on rules involving non-payment of premiums, confirmation of enrollment or disenrollment, or nonclaim specific notification information).
>
> (6) Marketing materials exclude ad hoc enrollee communications materials, meaning informational materials that--
>
>> (i) Are targeted to current enrollees;
>>
>> (ii) Are customized or limited to a subset of enrollees or apply to a specific situation;
>>
>> (iii) Do not include information about the plan's benefit structure; and
>>
>> (iv) Apply to a specific situation or cover claims processing or other operational issues.

42 C.F.R. § 422.2260 (2010).

Defendants cite <u>Uhm v. Humana, Inc.</u> for the proposition that Reeder's misrepresentations fall within the definition of "marketing materials" as "[m]arketing representative materials such as scripts or outlines for telemarketing or other presentations." 42 C.F.R. § 422.2260(5)(ii) (2010). The Court disagrees. In <u>Uhm</u>, the court found:

> The vague oral misrepresentation that the Uhms allege as the basis for their state consumer protection act claim-that Humana's representatives "systematically represented" to them that they would receive Medicare Part D prescription drug plan coverage and benefits beginning January 1, 2006-is also preempted . . . [because] [t]hose representations appear to have been made pursuant to "marketing

9

representative materials such as scripts or outlines for telemarketing."

620 F.3d at 1151. However, the record here is unclear as to the exact content of Reeder's oral representations and whether they were made in conjunction with CMS approved materials such as "scripts or outlines for telemarketing." Based on the record, the representations appear to be "ad hoc enrollee communications" which are specifically excluded from the definition of "marketing materials." See 42 C.F.R. § 422.2260(6). Accordingly, drawing all factual inferences in favor of Plaintiffs, the Court cannot reasonably conclude at this time that Reeder's alleged misrepresentations constitute "marketing materials."

The Uhm court recognized the "ad hoc exception," but found it inapplicable because "[a]lthough oral representations might fall within that exclusion, the Uhms allege that Humana's oral misrepresentations were made 'systematically' and to the entire class. We therefore cannot surmise how they could have been 'ad hoc' communications." Uhm, 620 F.3d at 1152 n. 29. However, the facts here are distinguishable from Uhm. Unlike the plaintiff in Uhm, Plaintiffs in this case have not alleged that the communications were made systematically. The Uhm court also relied on the fact that the oral representations "were identical to the representations made in the [CMS approved] marketing materials." Uhm, 620 F.3d at 1151-53. Therefore, Uhm concluded that "[w]ere a state court to determine that Humana's marketing materials constituted misrepresentations resulting in fraud . . . , it would directly undermine CMS's prior determination that those materials were not misleading and in turn undermine CMS's ability to create its own standards for what constitutes "misleading" information about Medicare Part D." Id. at 1157. However, in the case at hand, Plaintiffs' fraud claim appears to be rooted in allegations that Reeder's representations were inconsistent with and distinct from any CMS pre-approved marketing materials. Thus, a finding that

Defendants engaged in fraud would not undermine CMS because CMS had never previously determined that Reeder's alleged statements were acceptable "marketing materials" or identical to materials that had been deemed acceptable. If it turns out that Reeder's representations were consistent with or identical to the CMS approved "marketing materials," the fraud claim will likely be dismissed as preempted. However, until such time, the claim is not preempted.

**C. 9(b) Standard**

Rule 9(b) provides that when alleging fraud in a complaint, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "In ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud with particularity, a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8." Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988) (quotations omitted). Rule 8 requires a "short and plain statement of the claim," and calls for "simple, concise, and direct" allegations. Fed. R. Civ. P. 8. Because the two rules must be read in harmony, it is "inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1298 (3d ed. 1998). "At a minimum, the Sixth Circuit requires the allegations to contain the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc., 2007 WL 2903231, *2 (E.D. Ky. Sept. 27, 2007).

The Court finds that Plaintiffs have satisfied the standard here. Plaintiffs state "[t]hat in October of 2008 the Plaintiffs were solicited by . . . Mark Reeder, to buy Humana Health Insurance.

11

That the Plaintiff contracted with the defendants for Health Insurance . . . at a monthly rate to raise $3 a month. However, in 2009, the premiums began to raise $50 a month." (Pls.' Compl. 2.) Viewed in the light most favorable to Plaintiffs, these allegations are sufficiently definite to satisfy 9(b).

### D. Breach of Contract Against Reeder

Defendants either mischaracterized Plaintiffs' allegations in the complaint or Plaintiffs have now voluntarily abandoned the breach of contract claim against Reeder. In their response, Plaintiffs state: "Also, the claim against Defendant, Reeder, is for his fraudulent actions in securing a contract for his employer and fellow Defendant, Humana. The Defendants make much of the fact that no contract exists between the Plaintiffs and Defendant, Reeder, personally, which was not the claim put forth by the Defendants." (Pls.' Resp. 3.) Accordingly, the breach of contract claim against Reeder is moot.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**. It is granted as to Plaintiffs' claim for failure to disenroll, but denied as to Plaintiffs' claims for fraud and breach of contract.

cc. Counsel of Record